UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIRIAM LIMA, ON HER OWN AND ON BEHALF OF HER MINOR CHILDREN, JANE DOE, L., S., and G., <br><br> Plaintiffs, <br><br> v. <br><br> COLLEEN STABILE, NICK CROWELL, LARRY JEDREY, and JANE/JOHN ROE EVERETT POLICE OFFICERS 1-5, in their individual capacities, <br><br> Defendants. | Civil Action No. |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**Introduction**

1. On March 11, 2018, Everett police officers illegally and forcibly entered Plaintiff Miriam Lima's home and terrorized her and her young children. The officers did not have a warrant or any other valid reason to enter the home. In their efforts to intimidate, the officers baselessly threatened that they would report Ms. Lima to the Department of Children and Families, presumably alleging neglect of her children, and with frivolous allegations of illegal drug use. In an attempt to protect themselves against the officers, Ms. Lima and her 16-year-old daughter initially video recorded the incident, but the officers intimidated and coerced them to stop and ultimately attempted to grab the phone away from Ms. Lima's daughter, all in violation of their First Amendment right to record

1

      the police. The officers falsely arrested Ms. Lima's 16-year-old daughter, "Jane Doe,"[1] and charged her with criminal offenses that she did not commit and that were eventually dismissed by the court.

2. Ms. Lima brings this action on her own and on behalf of her minor children to vindicate multiple violations of their state and federal civil rights by the defendant officers and for state law torts.

**Jurisdiction and Venue**

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343 on all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over all state law claims. Venue in the District of Massachusetts is proper under 28 U.S.C. § 1391(b).

**Parties**

4. Plaintiff Miriam Lima (hereinafter "Ms. Lima"), is an individual who, at all times relevant to this complaint, was a resident of Middlesex County, Massachusetts.

5. Plaintiff Jane Doe (hereinafter "Doe"), is an individual who, at all times relevant to this complaint, was a minor, and a resident of Middlesex County, Massachusetts. She brings this action by and through her mother and next friend, Miriam Lima.

6. L., S., and G. are minors who, at all times relevant to this complaint, were residents of Middlesex County, Massachusetts. They bring this action by and through their mother and next friend, Miriam Lima.

---

[1] Plaintiff Jane Doe has simultaneously filed a motion to proceed pseudonymously.

7. Colleen Stabile (hereinafter "Stabile") was, at all times relevant to this complaint, a duly appointed police officer of the Everett Police Department. Her actions alleged in this complaint were taken under the color of the laws of the Commonwealth of Massachusetts. She is sued in her individual capacity.

8. Nick Crowell (hereinafter "Crowell") was, at all times relevant to this complaint, a duly appointed police officer of the Everett Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts. He is sued in his individual capacity.

9. Larry Jedrey, (hereinafter "Sergeant Jedrey") was, at all times relevant to this complaint, a duly appointed sergeant of the Everett Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts. He is sued in his individual capacity.

10. Jane/John Roe Everett police officers, were, at all times relevant to this complaint, duly appointed police officers of the Everett Police Department. Their actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts. They are sued in their individual capacity.

**Facts**

**The Illegal Entry Into Plaintiff's Home**

11. On March 11, 2018, Ms. Lima was living at 44 Hancock St., Apt. 5, in Everett, Massachusetts with her four minor children: Doe, who was then 16 years old; L. who was then 12 years old; S., who was then 11 years old; and G. who was then 3 years old.

12. At approximately 8:12 p.m. on March 11, 2018, Defendants Stabile and Crowell arrived at Ms. Lima's apartment door and started banging on it, yelling "police, open up."

13. Stabile and Crowell had been dispatched to that location, which is an apartment building containing six units, as the result of an anonymous 911 call.

14. The anonymous 911 caller had falsely reported the odor of marijuana and the sound of kids crying coming from Ms. Lima's apartment.

15. When the officers banged on Ms. Lima's apartment door, Doe and her three younger sisters were at home with their mother.

16. Ms. Lima had just gotten out of the shower and the children did not answer the door, and instead waited for their mother to get dressed.

17. When Ms. Lima opened her apartment door, she and Doe used their cell phones to record their interaction with the officers. What occurred at the doorway is captured on video.

18. Stabile, who was standing in the hallway with Crowell, stated that the officers needed to come in and speak with Ms. Lima.

19. The video recordings reveal that Ms. Lima's children were not crying when she answered the door.

20. Notwithstanding the well-established First Amendment right to video record police officers, Stabile ordered Ms. Lima and Doe to "shut the phones off."

21. Ms. Lima asked the officers if they had a warrant.

22. Stabile told Ms. Lima that they did have a warrant, which was not true and clearly used as a means to coerce Ms. Lima to allow them into her apartment.

23. Despite there being no evidence of marijuana smoke in the apartment and that the children were not crying and were home with their mother, the officers nevertheless continued to demand entrance into Ms. Lima's apartment.

24. During the interaction in the doorway, despite the video footage showing that Ms. Lima and her daughter spoke English without any accent, Stabile made a derogatory ethnic comment to Ms. Lima (who is Latina), sarcastically remarking, "We speak English."

25. Stabile and Crowell blocked the door with their feet to prevent Ms. Lima from closing the door.

26. Continuing to attempt to wear down Ms. Lima's will, Stabile threatened to make a complaint against Ms. Lima with the Department of Children and Family Services ("DCF") if the officers were not permitted entrance into her apartment.

27. Ms. Lima told Doe to call 911 to request aid, which she did.

28. Stabile called for backup over her police radio.

29. Sergeant Jedrey, a supervising sergeant, arrived with at least two other Everett police officers.

30. Ms. Lima told Sergeant Jedrey that Stabile and Crowell were scaring her and her children.

31. As Ms. Lima explained to Sergeant Jedry that she was taking a shower prior to the officers' arrival, Stabile continued to attempt to gain unlawful access to Ms. Lima's home and to intimidate her by baselessly accusing her of "flushing the drugs down the toilet."

32. Officers finally physically forced their way into Ms. Lima's home. Stabile ordered Ms. Lima and her children to "move" and yelled at them to "get out of the way," while pushing them with her hands.

33. Doe and L. moved out of the officers' way and into a hallway leading to the bedrooms.

34. Stabile attempted to grab Doe's cell phone out of her hands to stop her from further recording the interaction.

35. As Stabile grabbed for her phone, Doe prevented her from seizing the phone by throwing it away from the officers and down the hallway towards a bedroom, which prevented further recording.

**The Arrest of Doe**

36. At this point, Doe no longer could record what was occurring because of the officer's actions.

37. Doe and L. stood in the hallway. L., who was 13, was hysterical, crying uncontrollably, and calling for her father.

38. One of the officers grabbed and held onto L.'s wrists.

39. Doe pleaded with the officer not to touch her sister as another officer or officers came from behind Doe, twisted Doe's arms behind her, and forced her elbows up into a painful position.

40. Doe was pushed face down to the ground, held by several officers, and then lifted up and placed in handcuffs.

41. As officers brought Doe outside the apartment building, Doe asked for her shoes and jacket, but she was forced to walk through the snow in socks and without a jacket and was placed in a police cruiser.

42. When the officers forced their way inside her home, Ms. Lima went to attend to her three-year-old daughter, G., who had begun to cry in the living room.

43. As Ms. Lima's video recording shows, Sergeant Jedrey and Stabile followed her there.

44. Sergeant Jedry attempted to calm G., while Stabile continued to threaten to call DCF to report Ms. Lima.

45. Sergeant Jedrey evidently had enough of Officer Stabile's conduct and ordered her to leave the living room; when she failed to do so, he loudly ordered her to leave Ms. Lima's home.

46. Stabile went outside the apartment building and told Doe that if she told the officers her name, they would let her go.

47. In the police cruiser, Doe heard the officers discussing what charges to bring against her.

48. She heard Stabile say that she "was going to get DCF to take all the kids and it was going to be fucking great."

49. Doe prayed in Portuguese, which was overheard by a male officer in the cruiser who told her she should go back to Brazil.

50. Officers searched Doe at the police station and then put her in a small cell where Doe spent approximately two hours, terrified.

51. She was finally released to her mother later that night.

**Report to DCF**

52. Stabile made good on her repeated threats and submitted a referral to DCF, alleging child neglect by Ms. Lima.

53. DCF initially did not support the allegations, but then sent a letter stating that the allegations were supported or "concern" was found based on the allegations. The case was ultimately closed by DCF.

**Filing of Criminal Charges Against Doe**

54. Stabile applied for a criminal complaint in Juvenile Court against Doe, charging assault and battery on a police officer, listing herself as the victim, and resisting arrest.

55. Based on Stabile's false allegations, the complaint issued against Doe on March 12, 2018.

**Police Continue to Harass Doe Following Issuance of the Criminal Complaint**

56. Once a criminal complaint issues out of the Juvenile Court, the clerk prepares a summons for arraignment that must be served on the individual charged. Defendants took advantage of this process to continue harassing Plaintiffs.

57. On or about April 2, 2018, while Doe was home alone, an Everett police officer arrived evidently to serve Doe with the summons. He banged on the door, yelling "I have these fucking papers to give you, you're gonna make me come back?"

58. Doe was frightened and did not open the door.

59. Doe informed her mother about this visit, and Ms. Lima called the Everett Police Station to ask why the police officer had come to her home. The officer puzzlingly explained that the officer came to her home to serve her brother with papers. Her brother did not reside with Ms. Lima.

60. Ms. Lima went to the police station with her brother the next day. The police did not give anything to her brother, but instead Ms. Lima was served with the summons for Doe's arraignment date, scheduled for May 16, 2018.

61. Despite having served the summons, the harassment did not come to an end. The following day, on April 4, 2018, while Doe was again home alone, a male police officer came to Ms. Lima's door and rang the doorbell several times, and also banged on the door.

62. Doe was afraid and did not answer the door.

63. Several minutes after the banging stopped, Doe looked outside and observed Stabile sitting in a police car outside of her apartment building.

64. Officers knocked on Ms. Lima's apartment door again on April 30, and May 8, 2018.

65. On May 8, 2018, on information and belief, those officers included Crowell and Stabile.

66. On May 15, 2018, at approximately midnight, Doe was being driven home by a friend when her friend's car was stopped by the Everett police.

67. After approaching the car, one of the officers asked Doe if she had gone to court yet for her arraignment.

68. Doe contacted her mother via text message, and Ms. Lima drove to her location.

69. When she arrived, Ms. Lima, who filmed this encounter with her cell phone, was again served with a duplicate summons for Doe's scheduled arraignment.

70. Doe was arraigned in the Juvenile Court on the charges of assault and battery on a police officer and resisting arrest on May 16, 2018.

**Consequences of the Criminal Charges**

71. At the time of this incident, Doe had a job working with children in an after-school program.

72. After the incident, Doe experienced anxiety, shame, and mental anguish as the result of the Defendants' actions.

73. Doe was fearful she could go to jail, or otherwise suffer from the false criminal charges pending against her.

74. She often felt nauseous and began to have stomach problems.

75. Doe also began to have trouble sleeping, and this in turn affected her work performance.

76. At some point, her employer learned she had been arrested and charged, and they fired her.

77. On December 19, 2018, the Commonwealth moved to dismiss the charges against Doe, and the charges were dismissed by the Court.

78. After the charges were dismissed, Doe applied for a job at the Boys and Girls Club in Lynn working with children.

79. She was hired, but after a background check was completed, she lost the job because of these charges.

80. Doe has graduated high school and would like to pursue employment working with children. Her fear that another potential employer will see these entries on her juvenile record and refuse to employ her has kept her from pursuing other work in the childcare related field.

**Consequences to Ms. Lima and her Minor Children**

81. Doe's little sisters also suffered harm from the Defendants' actions.

82. G., who was only three years old at the time of the incident, was emotionally traumatized and suffered from nightmares as a result.

83. G. still fears that the police will come back and harm her.

84. To this day, G. is fearful if someone knocks or rings the doorbell and exhibits anxiety when she sees a police officer or a police cruiser.

85. L., who was thirteen years old at the time of the incident, suffered a panic attack in response to the Defendants' actions.

86. S., who was twelve years old at the time of the incident, was also traumatized as a result of this incident and continued to fear the police.

87. As a result of the Defendants' actions, Ms. Lima feared the police would lie and cause her to lose custody of her children, and she did not feel safe in her home or in Everett. As a result, she moved her family out of Everett in 2019.

88. As a result of the Defendants' actions, Ms. Lima felt humiliated and experienced anxiety, physical pain, and emotional distress, which has included, but is not limited to, fear, humiliation, sadness, anger at the unfair treatment, feelings that her home and family were violated, feeling insulted, marginalized, devalued, discriminated against, and disrespected.

89. Ms. Lima seeks to recover damages, including punitive damages, attorney's fees and costs for herself and on behalf of her children, for the outrageous treatment they endured.

## Causes of Action

### COUNT I
### 42 U.S.C. §1983
### Unlawful Entry
### (Stabile, Jedrey, Crowell, John/Jane Roe officers)

90. The above paragraphs are incorporated by reference.

91. Defendants, acting under color of law and without a warrant unlawfully entered Ms. Lima's home in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

92. Ms. Lima did not consent to the defendants' entry, and there were no circumstances justifying the warrantless entry into her home.

93. As a direct and proximate result of Defendants' actions, Plaintiffs suffered the damages described above.

## COUNT II
## 42 U.S.C. §1983
## Excessive Force
## (Stabile, Jedrey, Crowell, John/Jane Roe officers)

94.  The above paragraphs are incorporated by reference.

95. The Defendants, acting under color of law, used unreasonable and excessive force against Plaintiffs.

96. By the actions described above, Defendants deprived Plaintiffs of clearly established rights under the Fourth Amendment and Fourteenth Amendments to the United States Constitution to be free from the use of excessive force.

97. As a direct and proximate result of Defendants' actions, Plaintiffs suffered the damages described above.

## COUNT III
## 42 U.S.C. §1983
## False Arrest
## (Stabile, Crowell, Jedrey Jane/John Roe officers)

98.	The above paragraphs are incorporated by reference.

99.	Defendants, acting under color of law, arrested Doe without probable cause.

100.	As a direct and proximate result of Defendants' actions, Doe suffered the damages described above, including being held in custody, and shame, humiliation, and mental anguish.

## COUNT IV
## 42 U.S.C. §1983
## Violation of First and Fourteenth Amendment
## (Stabile, Crowell, John/Jane Roe officers)

101.	The above paragraphs are incorporated by reference.

102. Defendants, acting under color of law, deprived Plaintiffs of their well-established rights under the First Amendment to the United States Constitution to record police officers engaged in their duties, and retaliated against Plaintiffs because they were exercising their rights.

103. That retaliation included threats to report Plaintiff Lima to DCF and the ultimate report to DCF, and the arrest of Doe.

104. As a direct and proximate result of Defendants' actions, Plaintiff Doe was falsely arrested and was unable to record the events leading to her arrest, making it impossible to be able to defend herself with the use of that recording, which would have shown that she did not assault and batter the officer or resist arrest.

105. Plaintiff Doe thus endured the anxiety of months of prosecution, damage to her reputation, loss of her employment, and the ability to obtain employment as a result of Defendants' actions.

106. Plaintiffs are also hampered in the present case by the loss of valuable evidence that would have been used against Defendants.

107. Plaintiff Lima suffered the ignominy and reputational harm of an inquiry by DCF and created suspicion on the part of DCF of her neglect of her children.

## COUNT V
## 42 U.S.C. §1983
## Supervisory Liability
## (Jedrey)

108. The above paragraphs are incorporated by reference.

109. Defendant Jedrey, acting under color of law in his role as a Sergeant, had a duty to control the conduct of inferior officers, and a duty and opportunity to intervene and prevent a violation of Plaintiffs' rights, but he failed to do so.

110. Defendant Jedrey could have prohibited the unlawful entry into Plaintiffs' home, Doe's false arrest, and the damages that resulted, but he failed to do so.

111. Defendant Jedrey could also have prohibited the other unlawful and retaliatory actions perpetrated by Defendants but he failed to do so.

112. As a direct and proximate result of Defendant Jedrey's actions, Plaintiffs suffered the damages described above.

### COUNT VI
### 42 U.S.C. §1983
### (Fourteenth Amendment Right to Due Process)
### (Stabile)

113. The above paragraphs are incorporated by reference.

114. Defendant Stabile, acting under color of law, interfered with Ms. Lima's due process right to the care, custody, and management of her children and to family integrity by filing a report with the Massachusetts Department of Children and Families falsely accusing Ms. Lima of neglect of her children.

115. As a direct and proximate result of Defendant Stabile's actions, Plaintiffs suffered the damages described above.

### COUNT VII
### Violation of Massachusetts Civil Rights Act, M.G. L. c. 12, §§ 11H, 11I
### (Fourth Amendment and Art. XIV of Massachusetts Declaration of Rights)
### (Stabile, Jedrey, Crowell, John/Jane Roe officers)

116. The above paragraphs are incorporated by reference.

117. Defendants interfered with, or attempted to interfere with, Plaintiffs' well-established rights under the Fourth Amendment to the United States Constitution

and Art. XIV of the Massachusetts Declaration of Rights to be secure from warrantless entries into their home.

118. Plaintiff did not consent to the Defendants' entry, and there were no circumstances justifying the warrantless entry into her home.

119. Defendants interfered with, or attempted to interfere with, Plaintiffs' rights by threats, intimidation or coercion.

120. As a direct and proximate result of Defendants' actions, Plaintiffs suffered the damages described above.

### COUNT VIII
### Violation of Massachusetts Civil Rights Act, M.G. L. c. 12, §§ 11H, 11I
### (First Amendment and Art. XVI of Massachusetts Declaration of Rights)
### (Stabile, Crowell, John/Jane Roe officers)

121. The above paragraphs are incorporated by reference.

122. Defendants interfered with, or attempted to interfere with, Plaintiffs' well-established right under the First Amendment to the United States Constitution and Art. XVI of the Massachusetts Declaration of Rights to record police officers engaged in their duties and retaliated against Plaintiffs for exercise of their right to record.

123. Defendants interfered with, or attempted to interfere with Plaintiff's rights by threats, intimidation, and coercion.

124. As a direct and proximate result of Defendants' actions, Plaintiffs suffered the damages described above.

### COUNT IX
### Violation of Massachusetts Civil Rights Act, M.G. L. c. 12, §§ 11H, 11I
### Supervisory Liability
### (Jedrey)

125. The above paragraphs are incorporated by reference.

126. Defendant Jedrey, in his role as a Sergeant, had a duty to control the conduct of inferior officers, and a duty and opportunity to intervene and prevent a violation of Plaintiffs' rights by threats, intimidation and coercion, but he failed to do so.

127. Defendant Jedrey's reckless or callous indifference to his subordinate officers' violations of Plaintiffs' constitutional rights violated Plaintiffs rights under the Massachusetts Civil Rights Act. See *Commonwealth v. Adams*, 416 Mass. 558 (1993).

128. As a direct and proximate result of Defendant's Jedrey's actions and/or inactions, Plaintiffs suffered the damages described above.

### COUNT X
### Violation of Massachusetts Civil Rights Act, M.G. L. c. 12, §§ 11H, 11I
### (Fourteenth Amendment and Art. XIV of the Massachusetts Declaration of Rights
### Due Process Rights)
### (Stabile)

129. The above paragraphs are incorporated by reference.

130. Defendant Stabile interfered with, or attempted to interfere with, Ms. Lima's due process right to the care, custody, and management of her children and to family integrity by filing a report with the Massachusetts Department of Children and Families falsely accusing Ms. Lima of neglecting her children.

131. Defendant Stabile violated Plaintiff's rights by threats, intimidation or coercion.

132. As a direct and proximate result of Defendant Stabile's actions, Plaintiffs suffered the damages described above.

## COUNT XI
### Claim under Massachusetts Law for False Imprisonment
### (Stabile, John/Jane Roe officers)

133. The above paragraphs are incorporated by reference.

134. Defendants committed the common law tort of false imprisonment by causing the arrest and imprisonment of Plaintiff Doe without probable cause.

135. As a direct and proximate result, Plaintiff Doe suffered the damages described above.

## COUNT XII
### Claim under Massachusetts Law for Malicious Prosecution
### (Stabile, John/Jane Roe officers)

136. The above paragraphs are incorporated by reference.

137. Defendants caused criminal charges to be brought and continued against Plaintiff Doe without probable cause and with malice.

138. The criminal action ultimately terminated in Doe's favor when the Court dismissed the charges.

139. As a direct and proximate result of Defendants' actions, Plaintiff Doe suffered the damages described above.

## COUNT XIII
### Assault and Battery
### (Stabile, Crowell, John/ Jane Roe officers)

140. The above paragraphs are incorporated by reference.

141. Defendants committed assault and battery on Plaintiffs by using intentional and unjustified force against them, causing the injuries described above.

## COUNT XIV
### Intentional Infliction of Emotional Distress
### (Stabile, Jedrey, Crowell, John/Jane Roe officers)

142.   The above paragraphs are incorporated by reference.

143.   Defendants through their extreme and outrageous conduct, intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of their conduct.

144.   As a direct and proximate result of the Defendants' actions, Ms. Lima, Doe, and Ms. Lima's other three minor children suffered severe distress and the injuries described above.

## **JURY TRIAL DEMAND**

Ms. Lima, on behalf of herself and her minor children, demands a jury trial on all triable claims.

## **PRAYER FOR RELIEF**

Ms. Lima, on her own and on behalf of her minor children, respectfully requests that this Court:

1. Enter judgment for Ms. Lima, on her own and on behalf of her minor children, on all claims;

2. Award Ms. Lima, on her own and on behalf of her minor children, compensatory damages in an amount to be determined at trial;

3. Award Ms. Lima, on her own and on behalf of her minor children, punitive damages in an amount to be determined at trial;

4. Award Ms. Lima, on her own and on behalf of her minor children, reasonable costs and attorneys' fees and expenses incurred in connection with this action;

5. Award Ms. Lima, on her own and on behalf of her minor children, prejudgment interest; and

6. Award Ms. Lima, on her own and on behalf of her minor children, such other relief as this Court deems just and appropriate.

                    Respectfully Submitted,

                    MIRIAM LIMA and her minor
                    children JANE DOE, L., S., and G.,
                    By their Attorneys,

                    /s/ Jennifer McKinnon
                    Jennifer McKinnon
                    BBO No. 657758
                    Jeffrey Wiesner
                    BBO No. 655814
                    Wiesner McKinnon LLP
                    90 Canal Street
                    Boston, MA 02114
                    Tel.: (617) 303-3940
                    Fax: (617) 507-7976
                    Email: jmckinnon@jwjmlaw.com
                    Email: jwiesner@jwjmlaw.com

Date: March 9, 2021