UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
                                                    )
MIRIAM LIMA, ON HER OWN AND ON                      )
BEHALF OF HER MINOR CHILDREN,                       )
JANE DOE, L., S., and G.,                           )
                                                    )
        Plaintiffs,                                )       Civil Action No.
                                                    )
v.                                                  )
                                                    )
COLLEEN STABILE, NICK CROWELL,                      )
LARRY JEDREY, and JANE/JOHN ROE                     )
EVERETT POLICE OFFICERS 1-5, in                     )
their individual capacities,                        )
                                                    )
        Defendants.                                )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JANE DOE'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM**

## INTRODUCTION

Plaintiff Jane Doe was 16 years old when she was falsely arrested and criminally charged in juvenile court, after Everett police officers illegally and forcibly entered her home. She now seeks a redress for violations of her state and federal constitutional rights, including this false arrest. By this Motion, seeks an order of this Court permitting her to proceed in this action under a pseudonym to protect her privacy and reputational interests. Allowing Jane Doe to proceed under a pseudonym will ensure that she can achieve effective relief without further damage to her reputation from her false arrest. Allowance of this motion will cause no prejudice to the Defendants—as they know Jane Doe's identity.

# FACTS

On March 11, 2018, an anonymous individual called 911 and falsely reported that there was the smell of marijuana coming from Jane Doe's apartment and that he heard kids crying. (Complaint, ¶ 14). As a result, Everett police officers were dispatched to Doe's apartment, and knocked on the door, claiming they needed to come inside to do a wellbeing check. Doe was home that evening with her mother and three younger sisters, ages 13, 12, and 3. (Complaint, ¶ 11).When her mother opened the door, she and Doe began filming the encounter with cell phones. (Complaint, ¶ 17). Although ordered by the officers to stop recording, Doe was able to capture much of the incident on video before the officers forced her to stop recording. (Complaint, ¶ 17). There were no children crying and no one was or had been smoking marijuana inside their home, yet officers still insisted they needed to enter the home. (Complaint, ¶¶ 19, 23). Over the course of the next several minutes, officers used a variety of threatening and coercive tactics, including threatening to report Jane Doe's mother to the Department of Children and Families and falsely accusing her of hiding drugs, in an attempt to persuade Jane Doe's mother to allow them inside her home, and when that failed, they finally physically forced their way inside. (Complaint, ¶¶ 22, 24, 26, 31). As the officers forced their way inside Jane Doe's home, they pushed and yelled at Jane Doe and her family, and Jane Doe and one of her sisters moved into a hallway while her mother moved into another room towards her toddler who had begun sobbing. (Complaint, ¶¶ 32, 42). One of the officers tried to grab Jane Doe's phone out of her hand, and in response Jane Doe threw her phone away from the officer and down the hallway. (Complaint, ¶¶ 34-35). At this point, Jane Doe could no longer record what was occurring because of the officer's actions. (Complaint, ¶ 36). As Jane Doe stood in the hallway, her sister was crying uncontrollably, and one of the officers grabbed and held onto L.'s wrists.

(Complaint, ¶¶ 37-38). When Doe pleaded with the officer not to touch her sister, one or more officers came from behind Doe, twisted Doe's arms behind her, and forced her face down to the ground, and then lifted her up and placed her in handcuffs. (Complaint, ¶¶ 39-40). She was arrested and transported to the police station, where she was held for some hours before being released to her mother. (Complaint, ¶¶ 50-51). A criminal complaint issued the next day in juvenile court falsely charging Jane Doe with assault and battery on a police officer and resisting arrest. (Complaint, ¶ 55). Over the course of the next several weeks, Everett officers continued the harassment of Jane Doe by serving or purporting to serve Jane Doe and her mother with the summons for her arraignment multiple times, by repeatedly coming to her house and even stopping a car Jane Doe was riding in. (Complaint, ¶¶ 56-69). After Jane Doe's arraignment in juvenile court on May 16, 2018, the case against her was pending for about seven months. (Complaint, ¶¶ 70, 77). During that time, she lost her after-school job and suffered anxiety due to the pending charges. (Complaint, ¶¶ 71-76). She also had trouble sleeping and had persistent stomach problems as a result of this anxiety. (Complaint, ¶¶ 74-75). Even after the charges were dismissed by the juvenile court on December 19, 2018, Jane Doe continued to suffer the consequences of her arrest and charging. When she applied for a job working with children in 2019, she was hired, but after a background check was completed, she lost the job because of these charges. (Complaint, ¶¶ 78-79). Jane Doe has graduated high school and would like to pursue employment. (Complaint, ¶ 80). Her fear that another potential employer will see these entries on her juvenile record and refuse to employ her has kept her from pursuing other work in the childcare-related field. (Complaint, ¶ 80).

Jane Doe alleges in her complaint that the Everett police officers violated her state and federal constitutional rights by illegally and forcibly entering her home without a warrant or any

other valid reason to enter the home. The complaint also alleges that the officers violated Jane Doe's First Amendment right to record the police, and falsely arrested her, charging her with criminal offenses that she did not commit and that were eventually dismissed by the court, as well as state law torts.

## ARGUMENT

I. JANE DOE SHOULD BE PERMITTED TO PROCEED UNDER A PSEUDONYM TO PROTECT HER PRIVACY AND REPUTATIONAL INTERESTS

Federal courts permit litigants to proceed under pseudonyms where they make a sufficient showing of the need for anonymity. See *Qualis v. Rumsfeld*, 228 F.R.D. 8 (D. D.C. 2015) ("Several circuit courts have condoned pseudonymous litigation"); *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993) ("Federal courts traditionally have recognized that in some cases the general presumption of open trials—including identification of parties and witnesses by their real names—should yield in deference to sufficiently pressing needs for party or witness anonymity"). Juveniles who file civil lawsuits based on violations of their constitutional rights often receive permission to protect their privacy and reputational interests. See e.g. *Doe v. Bates*, No. 3:18-CV-1250-SMY-RJD, 2018 WL 4539034, at *1 (S.D. Ill. Sept. 21, 2018) ("the Court agrees with Plaintiff's contention that revealing his identity would, in effect, unravel the protections afforded to his juvenile record, which is maintained in confidence."); *T.S.H. v. Nw. Missouri State Univ.*, 2019 WL 5057586, at *2 (W.D. Mo. Oct. 8, 2019) (granting anonymity where "revealing Plaintiffs' identities in this lawsuit would defeat the protections afforded" by state statute that kept juvenile records confidential). Doe fears that public identification will subject her to reputational harm, and will defeat the purpose of this litigation, to vindicate her false arrest.

To assess a litigant's request for anonymity, courts must "balanc[e] the moving party's

4

privacy interest against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *J.W., et al. v. District of Columbia*, 318 F.R.D. 196, 202 (D. D.C). 2016). The First Circuit has not adopted a framework for conducting this required balancing. However, courts have frequently looked to two tests: one adopted by the Third Circuit, and the other by the Fourth and D.C. Circuits. See *Doe v. Provident Life and Accident Ins. Co.*, 176 F.R.D. 464, 468–69 (E.D. Pa. 1997); *J.W.*, 318 F.R.D. at 198. Doe satisfies the standard for anonymity under both of these tests.

## A. Jane Doe Satisfies the Third Circuit's Test for Permitting a Litigant to Proceed Under a Pseudonym.

In considering requests for anonymity, the Third Circuit refers to the following non-exhaustive list of factors:

(1) the extent to which the identity of the litigant has been kept confidential;
(2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;
(3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;
(4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;
(5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and
(6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

Factors weighing against the use of a pseudonym under this test are:

(7) the universal level of public interest in access to the identities of litigants;
(8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and
(9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Doe v. Megless*, 654 F. 3d 404, 409 (3rd Cir. 2011). Each factor is addressed in turn below.

1.      **The extent to which the identity of the litigant has been kept confidential**. Doe's arrest and the charges filed against her have not been made public, as she was charged as a juvenile in juvenile court. Massachusetts has a detailed statutory scheme in place with the purpose of protecting "the confidentiality of Juvenile Court proceedings, juvenile records maintained by the court, and juvenile records maintained by the probation department. Juvenile proceedings are not accessible to the public." *Commonwealth v. Gavin G.*, 437 Mass. 470, 473 (2002). These confidentiality provisions reflect the unique rehabilitative philosophy underlying the juvenile justice system, which is tasked with acting "in furtherance of a child's welfare," and ensuring that "the juvenile shall suffer no injury as a result of involvement with the judicial process by the dissemination of records which have in some ways an impact equivalent to criminal records." *Id*. at 472 (citations omitted). See also *Commonwealth v. Humberto H.*, 466 Mass. 562, 576 (2013) ("Protecting a child from the stigma of being perceived to be a criminal and from the collateral consequences of a delinquency charge is important even where the complaint is supported by the evidence.").

2.      **The bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases.** The second factor considers the reasons for anonymity. *Provident Life and Accident Ins. Co*., 176 F.R.D. at 468. Here, Doe pursues anonymity to protect her privacy and avoid reputational damage from Defendants' unconstitutional conduct. Doe seeks to avoid the stigma associated with being arrested and criminally charged as a juvenile. Her juvenile court records are protected from public disclosure by the statutory protections described above. Although Doe has already suffered loss of employment due to her false arrest, disclosure of juvenile records is limited to particular employers who are granted access to such records by statute. See Mass. G. L. c. 6, , § 172 (delineating certain exceptions to the public records

restrictions on juvenile records for entities that, among other things, provide care to children). Absent relief from this Court, Doe's ability to gain employment will be further compromised by public disclosure of her arrest and prosecution in juvenile court. Anyone would then have the ability to simply google her name and see that this Complaint describing her arrest. To proceed without a pseudonym would force Doe to exacerbate the very harm she seeks to vindicate by the filing of the lawsuit.

In a case involving a student seeking to proceed pseudonymously, the U.S. District Court for the District of New Hampshire allowed a student's request to proceed pseudonymously in a civil rights suit against his college after he was expelled for violating the school's code of conduct. *Doe v. Trustees of Dartmouth College*, No. 18-cv-040-LM, 2018 WL 2048385 (D. N.H. May 2, 2018). The plaintiff argued that his reputation and career prospects would be significantly damaged if he was not allowed to proceed under a pseudonym, affecting his ability to complete his education and gain employment. The student further argued that without anonymity he would be a target of threats, harassment, and intimidation. The court granted the student's motion to proceed pseudonymously, in part because "whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment, and will defeat the very purpose of this litigation." *Id*. at *6. The court added that this concern is "exacerbated in the Internet age," where the public will be able to connect the student's name to the school's sanctions, regardless of the success of the litigation. *Id*. at *5. Like *Trustees of Dartmouth College*, requiring Doe to identify herself in this case would "defeat the very purpose of this litigation."

3. **The magnitude of the public interest in maintaining the confidentiality of the litigant's identity.** The third factor asks if the public interest supports anonymity. The public

interest supports anonymity when denying it would deter similarly-situated litigants from bringing suit. *Trustees of Dartmouth College*, 2018 WL 2048385, at *6; *see also Megless*, 654 F.3d at 410. Here, requiring a sixteen year old who seeks to vindicate the violation of her constitutional rights to be publicly named in order to seek redress would plainly deter such litigation. As such, the public interest is served by anonymity "because it is always in the public interest to prevent the violation of a party's constitutional rights." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014). Cf. *Doe v. Provident Life & Acc. Ins. Co., 176 F.R.D. 464, 468 (E.D. Pa. 1997)* ("[D]enying plaintiff the use of a pseudonym may deter other people who are suffering from mental illnesses from suing ... merely because they fear that they will be stigmatized in their community if they are forced to bring suit under their true identity.").

**4.    Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities.**
The fourth factor has to do with whether there is an "atypically weak public interest" in knowing the plaintiff's identity. *Doe v. Megless*, No. 10-1008, 2010 WL 3076246 at *4 (E.D. Penn. Aug. 5, 2010). Here, Doe's mother is identified, which weakens any argument that the public will suffer for not knowing Doe's identity.

**5.    The undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified.** The fifth factor requires courts to consider if the plaintiff will pursue the case if anonymity is denied. *Megless*, 2010 WL 3076246 at *5. This factor weighs in favor of anonymity because Doe may decline to pursue her claims without the protection of a pseudonym. As noted above, the Court will be unable to provide fully effective relief if Doe is required to reveal her identity, where her

juvenile court records are under the protections afforded by Massachusetts' statutory scheme, discussed *supra*.

**6. Whether the party seeking to sue pseudonymously has illegitimate ulterior motives.** The sixth factor asks whether the requesting party has "illegitimate ulterior motives." This factor weighs in favor of anonymity because Doe has only legitimate motives, as set forth above, for requesting anonymity.

**7.-8. The Public Interest in Non-Anonymity, and in the Litigant's Identity.** The seventh and eight factors, together, ponder the public interest in access to the identity of the litigants after considering the subject matter of the litigation, the status of the litigants, and any other interests in knowing the litigant's identity. This factor does not weigh against anonymity because this litigation involves an incident, much of which was video recorded, and the only individual seeking to be protected was a juvenile. Further, although Defendants are public officials, the plaintiff requesting anonymity is a private figure with enhanced privacy rights as a minor. *See J.W*, 318 F.R.D. at 200.

**9. Illegitimate Opposition.** There is no legitimate reason for Defendants to oppose this Motion.

**B. Jane Doe Satisfies the Fourth and D.C. Circuit Standards for Proceeding Pseudonymously.**

The Fourth and D.C. Circuits have adopted a standard for pseudonymous litigation that considers factors more closely tailored to this case. Doe easily satisfies this alternative rubric, which considers:

(1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

9

(2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
(3) the ages of the persons whose privacy interests are sought to be protected;
(4) whether the action is against a governmental or private party; and
(5) the risk of unfairness to the opposing party from allowing an action against it proceed anonymously.

*J.W.*, 318 F.R.D. at 198, citing *National Ass'n of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).

**1.     Criticism vs. Privacy.** The first factor weighs in favor of anonymity because Doe seeks to protect a legitimate privacy interest in her juvenile arrest and criminal prosecution. *See Gavin G., supra (*Describing Massachusetts' detailed statutory scheme restricting public access to juvenile court proceedings and records in order to protect children from the stigma of being perceived to be a criminal); see also e.g., 18 U.S.C.A. § 5038 (limiting the disclosure of juvenile records in federal proceedings); *United States v. Three Juvs.*, 61 F.3d 86, 88 (1st Cir. 1995) (recognizing that the Federal Juvenile Delinquency Act, 18 U.S.C.A. §§ 5031-5042, has an overarching rehabilitative purpose and attempts to insulate juveniles from the stigma of a criminal record, as well as an "express mandate" that a juvenile's name not be made public).

Doe's motivation in remaining anonymous in this case is based on her desire to protect his privacy and avoid additional reputational harm that gave rise to her Complaint.

**2.     Retaliatory Harm.** Anonymous litigation is permissible when "'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *J.W.*, 318 F.R.D. at 200, quoting *Doe v. Frank*, 951 F.3d 320, 322–23 (11th Cir. 1992). This factor weighs in favor of anonymity because an injury Doe is seeking to vindicate in this case—her juvenile arrest and the collateral consequences flowing from that arrest—would be exacerbated if her identity is disclosed.

3. **Ages of Persons Sought to Be Protected.** Doe was 16 years old at the time of this incident. This factor weighs in favor of anonymity because minors have heightened privacy interests. *J.W.*, 318 F.R.D. at 200.

4. **The Defendants are governmental officials.** Under the Fourth and D.C. Circuit standard, anonymous litigation is more acceptable when the defendant is a governmental body because government defendants "do not share the concerns about 'reputation' that private individuals have when they are publicly charged with wrongdoing." *J.W.*, 318 F.R.D. at 201, quoting *Doe v. Cabrera*, 307 F.R.D. 1, 8 (D.D.C. 2014). This factor weighs in favor of anonymity because Doe's action is against Defendants acting in their capacity as police officers.

5. **There is no unfairness to Defendants.** This factor weighs in favor of anonymity because Defendants, who already know the identity of Doe and her family, will face no unfairness if Doe proceeds under a pseudonym. Defendants would be able to fully litigate this case without any burdens. Allowing Doe to use a pseudonym would only "marginally" burden Defendants by requiring them to redact names in court filings and avoid the disclosure of her identity. *J.W.*, 318 F.R.D. at 201.

## CONCLUSION

For the foregoing reasons, Jane Doe respectfully requests that her motion to proceed under a pseudonym be granted.

Respectfully Submitted,
JANE DOE,
By her attorneys,

/s/ Jennifer McKinnon
Jennifer McKinnon
BBO No. 657758
Jeffrey Wiesner
BBO No. 655814
Wiesner McKinnon LLP
90 Canal Street
Boston, MA 02114
Tel.: (617) 303-3940
Fax: (617) 507-7976
Email: jwiesner@jwjmlaw.com
Email: jmckinnon@jwjmlaw.com

Date: March 9, 2021